JOSÉ RODRÍGUEZ RODRÍGUEZ, Plaintiff and Appellant, *v.* GOVERNOR OF PUERTO RICO, ETC., ET AL., Defendants and Appellees.

No. 603. Decided October 23, 1964.

*Guillermo S. Pierluisi* for appellant. *J. B. Fernández Badillo, Solicitor General, Jenaro Marchand,* and *Nilita Vientós Gastón, Assistant Solicitors General,* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

In October 1956 plaintiff-appellant was removed from office as Lieutenant of the State Police because of physical

disability for work. He was retired under Act No. 447 of 1951. On March 10, 1958 he filed a complaint in the Superior Court claiming pension under Act No. 189 of May 2, 1951. The Superior Court, San Juan Part, denied his claim.

On April 7, 1940 plaintiff was injured in the police service when his motorcycle skidded. He suffered "severe contusion on his head . . . linear fracture of the posterior wall of the frontal sinus, extending upwards and toward the left side of the frontal bone and ending at the place of union between the middle third and the inferior frontoparietal suture." He was released to return to work on September 27, 1940 by the State Insurance Fund with a permanent partial disability of 15% loss of the general physiological functions.

On July 29, 1940 he had another accident in the service in which he suffered "comminuted fracture middle third right tibia; simple fracture of the os-calcis distale of the same bone; contusion with edema in the right ankle; contusion on the left knee." He was discharged to return to work by the Fund on May 26, 1941 and the Industrial Commission granted him a permanent partial disability equivalent to 25% loss of the functions of the right leg under the knee.

On November 10, 1947 plaintiff had another accident in the police service while intervening in a fight and he suffered a contusion in the right ankle. He was discharged on August 3, 1948 and the Fund granted him 25% disability of the physiological functions of the right foot at the ankle.

On June 14, 1954 plaintiff had another accident in the police service while he was carrying out a warrant of arrest, and a sprain on the right foot was diagnosed. He was discharged on August 17, 1954. The Industrial Commission granted him a disability equivalent to the loss of 50% of the physiological functions of the right foot at the ankle.

On May 13, 1956 plaintiff suffered his last accident in the service prior to his retirement. He suffered injuries in the lumbar region. The Fund granted him a disability equiva-

lent to 40% loss of the general physiological functions, but it granted compensation on the basis of only 20%, alleging that plaintiff had refused to submit himself to a surgical operation. The case was taken to the Industrial Commission and from the medical evidence of plaintiff's physical examination on September 11, 1956 by Dr. Ramírez de Arellano, it appears that there existed a history of a lumbar hernia; there was atrophy of the right leg and thigh, weakness in the movements of the right ankle; weakness of the Achilles reflexes; plaintiff limped on his right leg, although he was suffering said conditions for years due to a previous accident; the right sciatic nerve was very sensitive to pressure as well as the spinous processes of the lumbar vertebrae 3, 4, and 5. The conclusion was reached that defendant had an herniated disk in the lumbar region. The X ray showed narrowness of space L-5 S-1 in its posterior part, the patient's movements were quite restrained and he could hardly move from one position to another on account of the pain. The foregoing appears in previous proceedings before the State Insurance Fund and the Industrial Commission, admitted in evidence.

After having suffered the accident on May 13, 1956 with the resulting injuries, plaintiff was definitively retired from the service for physical disability. The undisputed evidence in the record shows that said accident occurred on that same date while appellant was executing a warrant of arrest issued by the Justice of the Peace of Cidra against Fernando Rivera Martínez for aggravated assault and malicious mischief. Plaintiff was driving an official "jeep." When he met the accused he jumped off. The former tried to resist the arrest and they struggled. He suffered the injury in the lumbar region with the resulting physical consequences already stated.

Defendants did not introduce any evidence. In their answer to the complaint they accepted the existence of the

accidents but denied that the same were "of the nature which entitled [plaintiff] to retirement under Act No. 189 of 1951." Rather a question of law. Act No. 189 of May 2, 1951 as amended by Act No. 94 of June 23, 1956, applicable to this case, provided that its provisions shall be applicable to cases of disability for physical work or death occurring under the following circumstances:

"(a) In case of a member of the Insular Police, while preventing or attempting to prevent the commission of an offense, or while *arresting* or trying to *arrest* a person who can be reasonably presumed to be connected with the commission of an offense."

In rendering judgment the trial court stated:

"We have doubts that this second accident* occurred as stated by plaintiff. But even if it were so, in our judgment it is not within 'the nature of those provided by the Act.' The Act [Spanish version] does not speak of *arrestar* or *tratar de arrestar*. It uses the word '*apresar*.' By so doing the lawmaker, in our judgment, intended to include only accidents occurring to a policeman when, without a warrant of arrest legally issued by a magistrate after finding probable cause, the policeman would try to apprehend somebody for the commission of a public offense or the commission of which was intended in his presence; or when the person that the policeman tries to apprehend has committed a felony, even if it was not in the presence of the policeman; or, lastly, when actually a felony has been committed and the policeman has reasonable cause to believe that the person involved has committed it. Both cases presented by plaintiff, which occurred after the enactment of Act No. 189, are two cases of arrest by virtue of a bench warrant. Both are misdemeanors and in one of them the arrest had nothing to do directly with the accident since the latter occurred when plaintiff slipped in a ditch caused by rain currents, and the other has not put the court, because of the description made by plaintiff, in a position to place the accident within the purpose con-

---

* It refers to the accident which occurred on May 13, 1956 during the arrest of Fernando Rivera Martínez.

templated by the lawmaker when enacting Act No. 189. The lawmaker's intent must be sought in the semantics of the word *'apresar'* (apprehend) which he used. *'Apresar'* has the connotation of seizing or holding a person by force, contrary to the purpose of a mere warrant of arrest. It is true that a person arrested may offer resistance to the police officer of such nature that it may even cause death, but in the present case plaintiff's evidence does not establish such a situation which is the extreme possibility in a case of arrest by virtue of a bench warrant after finding probable cause."

In view of the previous considerations at law the trial court dismissed the action. In this Court, the Solicitor General has admitted in his motion of opposition and in his brief that the foregoing is an erroneous interpretation of the Act. The Solicitor General says:

"We agree with appellant that the interpretation given by the judge to the word *'apresar'* as used in Act No. 189, is erroneous. We have reached the previous conclusion after studying the declaration of purposes of said Act and the decision of the Court in the case of *López v. Muñoz, Governor,* 81 P.R.R. 328."

 We agree with the criterion of the Solicitor General. It is noted that in the English version of Act No. 189 of 1951 and of Act No. 94 of 1956, as officially published, in both occasions arresting is used to translate *"apresar"*: *"While arresting or trying to arrest a person."* Perhaps this is not the most accurate translation. But apart from that, the term *"apresar"* as used in Act No. 189 appears to be closely related to and interchangeable with the term "to arrest". In the legal concept of the arrest there exists the ingredient of apprehension of an individual and of restraint of his liberty which is involved in that of apprehend. According to the Code, and now to the Rules of Criminal Procedure, an arrest is made by an actual restraint of the person of the defendant or by the submission to the custody of an officer. It should be noticed also that in Criminal Procedure

the term "to arrest" is used indistinctly in case of an arrest or actual restraint of a person in executing a bench warrant, as well as in the case of the same restraint without the previous warrant.[1]

■■ Setting aside the semantics, the law is the expression of a desired or wished purpose or end. In the light of the ends and purposes of Act No. 189 it cannot be considered that the lawmaker wished to give the additional protection of said statute in those cases in which the officer acts without a warrant of arrest, in which there may be a mistake or error of appraisal and where he is more free to shun an encounter or postpone it, and he did not wish to give said additional protection in cases where the officer acts in performance of a judicial order where he has no other alternative but to proceed and confront all the circumstances, even in danger of losing his life and even if he loses it. It is evident to us that such cannot be the lawmaker's intent. The clear text of the law is par excellence the expression of the legislative intent, and Act No. 189 did not interpolate said ingredient of distinction between an arrest performed with a warrant and another without it.

In *López* v. *Muñoz, Governor*, 81 P.R.R. 328 (1959), the officer suffered injuries when he fell while pursuing a person whom he tried to apprehend who took flight. The Superior Court denied the right to pension under Act No. 189 on the theory that the same is not applicable to said kind of

---

[1] In Cabanellas, *Diccionario de Derecho Usual* (1953), "*arresto*" is defined as the act of *apprehending* a person and restraining his liberty. Vox defines "*arrestar*" as synonym of *halt*, and to halt, to prevent progress. Casares in his *Diccionario Ideológico* defines "*arrestar*" as detain, imprison, and "*apresar*", to seize, to imprison. And Ruiz Cardenas, in his *Nuevo Diccionario de Sinónimos y Palabras Afines* (1956), says: "*Apresar*": seize, apprehend . . . *arrest* . . .; "arrest": detain, seize. In the English version, Webster, Third International Dictionary (1961), defines "arrest": "*To catch or take hold of; seize, capture; to take or keep in custody by authority of law.*" "*Apprehend*" (*apresar*): "*to take possession of: to take hold of: arrest, seize.*"

accidents and that it covered only damages caused as a *direct, violent, and extraordinary* result of the act of arresting a delinquent or attempting to prevent the commission of an offense. Asserting the purposes of the Act, this Court rejected said ingredient interpolated in the Act by the Superior Court and sustained the right of the officer to pension under Act No. 189.[2]

Although he understands that the interpretation of the Act was not correct, the Solicitor General insists that plaintiff is not entitled to the claim. The existence of an accident on May 13, 1956 is admitted and it is admitted that plaintiff was separated from the service months later due to physical disability for work. At the hearing in the trial court in this case, Dr. Hiram Vázquez Milán testified. He stated that he had intervened directly in plaintiff's last three accidents. He ratified that the last accident caused the hernia of the disk in the spine and the same aggravated the general physical condition of which he was already suffering due to previous accidents. This last injury, he said, brought about the climax of his inability to perform his duties as policeman. It is possible that the struggle in this case was not so intensive as to cause such an injury in the case of a completely healthy person, without the disability already suffered by appellant. However, in *López v. Muñoz, Governor,* 80 P.R.R. 4, decided in 1957, we stated thus:

"The trial court determined that under the facts found by the Pension Board, the 1943 and 1949 accidents did not come within the terms of Act No. 189 as a question of law. We think it appropriate to point out that Act No. 189 contains no language indicating that it was to have retroactive effect. No pension could therefore be awarded for those accidents as such since they occurred prior to the passage of Act No. 189

---

[2] The *López* case was decided in 1959. Act No. 189 was applied as in this case, before being repealed and superseded by Act No. 127, effective July 1, 1958.

in 1951. See *Mgr. of State Insurance Fund* v. *Industrial Comm'n*, 77 P.R.R. 483. However, we disapprove of the following language of the trial court: 'In addition, as the defendant well points out, the disability resulting to the plaintiff by virtue of this last accident was only 10 per cent of the physiological functions of the left knee, which in itself would not have totally disabled the plaintiff for physical work.' *On the contrary, Act No. 189 does not require a showing that the most recent accident in and of itself created the disability contemplated by Act No. 189. It would be sufficient if the latter—although it only aggravated an already existing partial disability—resulted in total disability to engage in physical work, provided the accident comes within the terms of Act No. 189.*" (Citations.) (Italics ours.)

█ The record of this case shows that the injury of 1956 in itself or taken in relation with the previous injuries, caused plaintiff's total disability for work.

By virtue of the applicable law as above stated, plaintiff's claim was in order.

The judgment of the Superior Court, San Juan Part, dismissing the complaint will be reversed and another rendered instead sustaining it.